IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

NO. 2:24-CV-3-FL

| | |
|---|---|
| ANTOINE D. MARTIN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ORDER |
| DEXTER HAYES Sheriff of the County of Hertford, | ) ) ) ) |
| Defendant. | ) |

This matter is before the court on defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (DE 12). United States Magistrate Judge Kimberly A. Swank entered memorandum and recommendation ("M&R"), pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), wherein it is recommended defendant's motion be granted and plaintiff's complaint be dismissed. (DE 19). Plaintiff filed objections to the M&R, and in this posture, the issues raised are ripe for ruling.

## BACKGROUND

For ease of reference, the court incorporates as follows the background of the case as set forth in the M&R, as follows:

> On May 10, 2018, Plaintiff was convicted of misdemeanor sexual battery in violation of N.C. Gen. Stat § 14-27.33. (Compl. [DE #1] ¶ 4); North Carolina v. Martin, No. 17-CR-057875-250 (Cumb. Cnty. Super. Ct. May 10, 2018). A final conviction for sexual battery is a "reportable conviction" under North Carolina's Sex Offender and Public Protection Registration Program ("the Registry"), meaning offenders are required to maintain registration in the Registry with the sheriff of the county where they reside. N.C. Gen. Stat. §§ 14-208.6(4)–(5), 14-208.7(a). Article 27A of Chapter 14 of the North Carolina General Statutes codifies

the purpose and requirements of the Registry. N.C. Gen. Stat. § 14-208.5 et seq. ["Article 27A"]. Plaintiff registered—and remains registered—with Defendant, Sheriff Dexter Hayes, the sheriff in Hertford County where Plaintiff resides. (Compl. ¶ 8.)

In January of 2019, Plaintiff sued Defendant, among others, arguing that certain obligations and restrictions of the Registry were unconstitutional. See Martin v. Cooper, No. 2:19-CV-2-BO, 2019 WL 4958208, at *1 (E.D.N.C. Oct. 7, 2019), aff'd, 797 F. App'x 111 (4th Cir. 2020) (per curiam) [hereinafter the "2019 suit" or the "prior suit"]. The court construed his claims as follows:

> First, plaintiff alleges that N.C. Gen. Stat. §§ 14-208.9(a) and 14-208.11(a)(2) are unconstitutionally vague and therefore violate his due process rights. Second, plaintiff alleges that N.C. Gen. Stat. § 14-208.18(a)(3) is unconstitutionally vague. Third, plaintiff alleges that he has been deprived of property and liberty without due process of law as a result of the State's enforcement of Article 27A of Chapter 14 of the General Statutes of North Carolina. Fourth, plaintiff alleges that the continued enforcement of Article 27A deprives him of his substantive due process rights. Fifth, plaintiff alleges that the in-person reporting requirements of certain subsections of Article 27A and information verification requirements of other subsections subject him to unreasonable searches and seizures in violation of the Fourth Amendment. Sixth, plaintiff alleges that Article 27A requires him to involuntarily disclose information to law enforcement that could be used to charge and prosecute him and therefore violates his Fifth Amendment rights against self-incrimination. Finally, plaintiff alleges that Article 27A's requirements amount to cruel and unusual punishment, in violation of the Eighth Amendment . . . .

Id. (citations omitted). Plaintiff's case against Defendant was dismissed under Rule 12(b)(6) for failure to state a claim, Martin, 2019 WL 4958208, at *10–11, and the Fourth Circuit affirmed, Martin v. Cooper, 797 F. App'x 111 (4th Cir. 2020).

In this suit, Plaintiff again brings claims against Defendant for declaratory and injunctive relief pursuant to 42 U.S.C. § 1983. (Compl. ¶¶ 25, 34, 38; Civil Cover Sheet [DE #1-1].)

Plaintiff's complaint, comprised of 1,473 numbered paragraphs and 366 pages in length, alleges constitutional violations stemming from his underlying arrest and conviction for sexual battery. (Compl. ¶¶ 1170–1241.) These claims appear to be against individuals not named as defendants in this case. (Id.) Moreover, Plaintiff states that this suit has nothing to do with his underlying conviction. (Pl.'s Resp. [DE #15] at 61.) Accordingly, the undersigned does not address the allegations pertaining to these individuals. [1]

---

[1] The instant paragraph comprises footnote 1 of the M&R.

> [Plaintiff's] suit alleges that subsections of Article 27A violate his rights under the First, Fourth, Fifth, Eighth, Thirteenth, and Fourteenth Amendments. (Compl. ¶ 25; Civil Cover Sheet.) The present allegations include facts alleged in the 2019 suit, as well as actions that have occurred since 2019 but stem from Plaintiff's registration in the Registry. (See, e.g., Compl. ¶¶ 239, 336, 616, 619.).
>
> For example, Plaintiff alleges he is prevented from going to the doctor, the church, the bank, the barber, and Walmart. (Compl. ¶¶ 174, 616, 621, 694, 810.) Additionally, he references an action on February 1, 2024, in which a law enforcement officer came to his house asking questions about his residence. (Compl. ¶ 336.) [2]

(M&R (DE 19) at 1-3). Additional factual allegations in the complaint will be set forth in the analysis herein.

Defendant filed the instant motion to dismiss for failure to state a claim upon which relief can be granted, on the basis of res judicata and failure to allege the asserted constitutional violations. In the M&R, dismissal is recommended both on the basis of res judicata and sufficiency of the allegations. Plaintiff filed objections to the M&R, and defendant responded to the objections.

February 26, 2025, the court construed defendant's response to objections as including an embedded motion to strike plaintiff's objections as exceeding length limitations, and the court addressed plaintiff's motions for leave to file excess pages, amend objections, and file a reply. The court denied the motion to strike, granted plaintiff's motion for leave, and denied plaintiff's remaining motions. The court also denied a motion by plaintiff seeking to have the magistrate judge respond to issues raised by plaintiff concerning the substance of the M&R, holding that "[t]hese issues raised by plaintiff's motion . . . more properly are considered in context as

---

[2] The instant paragraph comprises footnote 2 in the M&R. Additional factual allegations from the complaint will be set forth in the analysis herein.

3

additional objections to the M&R, which the court will consider upon review of the same." (Order (DE 27) at 2).

## COURT'S DISCUSSION

A.     Standard of Review

The district court reviews de novo those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. See Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, ... bare assertions devoid of further

4

factual enhancement[,] ... unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).[3]

B.  Analysis

Upon careful review of the M&R, plaintiff's objections, and the record in this case, the court concludes that the magistrate judge correctly determined that defendant's motion must be granted because plaintiff's claims are barred by res judicata and, in the alternative, because plaintiff has failed to allege sufficiently he has been deprived of a federal right. The court writes separately to augment the analysis in the M&R and to depart from its reasoning in those instances noted herein. Accordingly, the court adopts the recommendation in the M&R, albeit in part on different reasoning.

1.  Res Judicata

"Res judicata or claim preclusion bars a party from suing on a claim that has already been litigated to a final judgment by that party or such party's privies and precludes the assertion by such parties of any legal theory, cause of action, or defense which could have been asserted in that action." Ohio Valley Env't Coal. v. Aracoma Coal Co., 556 F.3d 177, 210 (4th Cir. 2009). "Even claims that were not raised in the original suit may be precluded if they arose from the same transaction or occurrence as those raised in the first suit and were available to the plaintiff at the time of the first suit." Id. at 210-211.

"Res judicata precludes the litigation by the plaintiff in a subsequent action of claims with respect to all or any part of the transaction, or series of connected transactions, out of which the first action arose." Harnett v. Billman, 800 F.2d 1308, 1314 (4th Cir. 1986). The court must "measure the scope of transaction or series of connected transactions by considering pragmatic

---

[3] Internal citations and quotation marks are omitted from citations unless otherwise specified.

factors such as common origin and relation, as well as whether the acts giving rise to the claim would be considered as part of the same unit by the parties in their business capacities." Id. "Claims may arise out of the same transaction or series of transactions even if they involve different harms or different theories or measures of relief." Id.

"Res judicata is not a technical rule but a rule of fundamental and substantial justice of public policy and private peace which should be cordially regarded and enforced by the courts to the end that rights once established by the final judgment of a court of competent jurisdiction shall be recognized by those who are bound by it in every way." Peugeot Motors of Am., Inc. v. E. Auto Distributors, Inc., 892 F.2d 355, 359 (4th Cir. 1989).

Applying these principles here, res judicata bars plaintiff from bringing each of the claims he asserts in the instant case, due to the prior judgment in his 2019 suit. Each of plaintiff's claims arises out of the same transaction or series of transactions that gave rise, at least in part, to the claims in the 2019 suit, namely defendant's enforcement of the statutory registry requirements against plaintiff, and all the claims either were actually made or were available to the plaintiff at the time of the 2019 suit.

A comparison of the two complaints demonstrates the common core of operative facts as it relates to defendant's enforcement of the statutory registry requirements. To begin, plaintiff asserts in the instant complaint that "[t]he deprivations of rights, under the color of law, that Plaintiff complains of, stem from the fact that Plaintiff is subject to Article 27 A of Chapter 14 of the General Statutes of North Carolina," and "[t]hese laws are enforced by the Sheriff of Hertford County, Dexter Hayes." (Compl. (DE 1) ¶ 3). He further asserts "Plaintiff has been subject to the complained of deprivations for more than (5) years." (Id. ¶ 12). He describes being first subject of an arrest warrant by defendant for alleged violation of Article 27A in August 2018. (Id. ¶ 7).

6

In the prior suit, plaintiff asserted he was registered with defendant May 14, 2018, and he is "required to abide by Article 27A . . . and failure to do so may result in Plaintiff being charged with, and prosecuted for, a felony." (Case No. 2:19-CV-2-BO Doc. 7 (hereinafter "Prior Compl.") ¶ 6). He described the same charge by defendant in August 2018 based upon an alleged violation of Article 27A. (Id.). He asserted "[a]s a result of the actions of Defendants in their official capacity, Plaintiff has and will continue to suffer injuries as outlined in the hereinafter mentioned Causes of Action from the enforcement of Article 27 A of Chapter 14 of the General Statutes of North Carolina." (Id. ¶ 20). The instant complaint is thus a "subsequent action of claims with respect to all or any part of the transaction, or series of connected transactions, out of which the first action arose." Harnett, 800 F.2d at 1314.

A comparison of the claims in the instant complaint and 2019 suit also demonstrates that each arises out of defendant's enforcement of Article 27A and each claim was or could have been brought in the 2019 suit. Plaintiff's instant First Amendment claim is based upon infringement of plaintiff's ability to attend church due to "the threat of arrest for violating" Article 27A, and based upon being forced to have his photograph taken. (Compl. ¶ 196). Plaintiff previously asserted a claim on the basis that defendant's enforcement of the registry could "make it unlawful for Plaintiff to attend any church service and at the very least 'chills' his First Amendment right to do so." (Prior Compl. ¶¶ 212; see id. ¶¶ 196, 310). He also previously asserted a claim based upon "having his identifying information published on the internet with the implication that he is a danger to public safety." (Id. ¶ 281).[4] Further, he could have asserted such claims in more detail then, as confirmed by his instant allegation that "[a]s a result of this classification and the threat of arrest from Sheriff, Plaintiff has had to abstain from attending church services for the purpose of religious

---

[4] In these respects, the court departs from the determination in the M&R that plaintiff's First Amendment claims were not brought in the 2019 suit. (See M&R (DE 19) at 8).

7

observance for more than five (5) years now," (Compl. ¶ 1043) (emphasis added), and he has been subject of the photography requirement eleven times "semi-annually." (Id. ¶¶ 218, 352, 1051).

Plaintiff brings Fourth Amendment search and seizure claims,[5] based upon defendant causing plaintiff to appear in person at the Sheriff's Office, and based upon defendant causing officers to appear at plaintiff's doorstep. (Compl. ¶¶ 260, 336). Plaintiff previously brought the same seizure claim based on allegation that when reporting to the Sheriff's Office, "[p]laintiff is not 'free-to-go' about his regular activities during the time that he is required to appear before Sheriff's Department, and failure to appear in-person will result in the issuance of a warrant." (Prior Compl. ¶ 321). Plaintiff likewise brought the same search claim based upon the allegation that "[o]n or about August 16, 2018 Sheriff's Department entered onto the private property of 351 Boone Farm Rd, Ahoskie, NC which is fenced in and has a posted 'No Trespassing' sign and further came directly onto the porch of the home in search of information constituting a criminal offense pursuant to §14-208.1 l(a)(2)." (Id. ¶ 337).[6]

Plaintiff asserts a Fifth Amendment self-incrimination claim based upon being compelled to answer questions during a "noncustodial registration process" established by the registry. (Compl. ¶¶ 419, 532-538). Plaintiff brought the same Fifth Amendment self-incrimination claim

---

[5] Plaintiff asserts the search claim under the Eighth Amendment and Fourteenth Amendment, but for purposes of the instant analysis the court refers to it as a Fourth Amendment claim. "Dressing a Fourth Amendment claim up in due process language does not transform it into a Fourteenth Amendment claim." Smith v. Travelpiece, 31 F.4th 878, 885 (4th Cir. 2022); see Albright v. Oliver, 510 U.S. 266, 273 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims").

[6] The court departs from the suggestion in the M&R that plaintiff's Fourth Amendment search claim is based solely on injuries that have occurred since 2019. (M&R (DE 19) at 8). Indeed, plaintiff bases the claim, in part, upon a search that took place in August 2018, (Compl. ¶ 1082), which is identical to the search alleged in the 2019 suit, (Prior Compl. ¶ 337-338), and which is the same type of search, indeed the "same governmental intrusion upon Plaintiff's home," plaintiff alleges to have occurred in February 2024. (Compl. ¶ 1094).

8

in the prior suit also based upon being "compell[ed] to be a witness against self," including by forced appearance "until information has been disclosed which could potentially be used against" him. (Prior Compl. ¶ 348).[7]

Plaintiff's Eighth Amendment claim likewise tracks the one he brought previously. (See Compl. ¶¶ 559-892; Prior Compl. ¶¶ 368-461). The Thirteenth Amendment claim based on "slavery and involuntary servitude" (Compl. ¶¶ 893-995) could have been brought previously. Finally, the Fourteenth Amendment procedural and substantive due process claims, based upon deprivations of liberty interests and intrusions (Compl. ¶¶ 996-1358), include claims brought in 2019 and claims that could have been brought previously. (See, e.g., Prior Compl. ¶¶ 198-306). In sum, all of plaintiff's claims are barred by res judicata because they "arose from the same transaction or occurrence as those raised in the first suit and were available to the plaintiff at the time of the first suit." Ohio Valley Env't Coal., 556 F.3d at 210-211.

Plaintiff's arguments concerning res judicata are without merit. Regarding his First Amendment claim, for example, plaintiff argues he "had suffered no injury in fact at the time of the previous litigation," because he previously did not allege that "churches, according to Sheriff, are identified as a place where minors frequently congregate." (Pl's Obj. at 30). However, plaintiff in fact asserted a claim previously based upon Article 27A chilling of his First Amendment right to worship, (Prior Compl. ¶ 212), and the court expressly examined and dismissed that claim on the merits. (Prior Order at 12) (examining plaintiff's claim that "his First Amendment rights are chilled: attending church services"). Moreover, plaintiff alleges he has abstained from church for "more than five (5) years now" due to the Sheriff's classifying churches as places where minors

---

[7] The court again departs from the suggestion in the M&R that plaintiff's Fifth Amendment claim is based solely on injuries that have occurred since 2019. (M&R (DE 19) at 8). The series of transactions upon which the claim is based are the alleged forced regular appearances at the Sheriff's Office, which have been taking place since before the time of the prior suit. (See Compl. ¶¶ 12, 218, 352, 546, 1051; Prior Compl. ¶¶ 271-280, 321, 348).

9

frequently congregate, which falls within the time of his prior complaint in February 2019 and in forma pauperis motion in January 2019. (Compl. ¶ 1043; see id. ¶ 739 ("Plaintiff has been prohibited from being at churches for the purpose of religious observance for over five (5) years due to § 14-208.18(a)(3) of Article 27A.")).

Likewise, plaintiff argues his Fourth Amendment seizure claim and Fifth Amendment claim is not the same due to "facts . . . not previously existent," such as "being sent a letter to his home informing Plaintiff of a mandatory in-person appearance informing of the threat of arrest for failure to do so." (Obj. at 25 (citing Compl. ¶ 305)). But plaintiff alleges in the complaint that he "has submitted to the show of authority arising under these statutes ten (10) times as of the date of this filing" and will continue to be seized in the same manner "another 49 times spanning the next 25 years," corresponding to a twice annual reporting, since the time of his prior complaint in early 2019. (Compl. ¶¶ 1051; see id. at 218 ("eleven times")). Moreover, while plaintiff claims now that the Sheriff was not enforcing previously section 14-208.9A of Article 27A, he complained of this same "semiannual[]" reporting requirement of Article 27A multiple times in his prior complaint, in support of his "unreasonable search and seizure" and Fifth Amendment claims. (Prior Compl. ¶ 329; see id. ¶¶ 43, 50, 280, 305, 317, 345).

Plaintiff argues that the instant Fourth Amendment search and Fifth Amendment claims "did not exist at the time of previous litigation," because, as stated in the M&R, they are "based on injuries that have occurred since 2019." (Pl's Obj. (DE 21) at 31). He suggests that application of res judicata in these circumstances would preclude him from ever bringing suit again, no matter how extreme defendant's enforcement of Article 27A becomes, citing examples of deputies sitting "on Plaintiff's porch 24 hours a day" or being forced to "appear in person every single day." (Id. at 35). However, plaintiff previously raised these very possibilities in the prior complaint. (Prior

10

Compl. ¶ 58, 338). Under the circumstances of this case, plaintiff's prior facial civil constitutional challenge of the statute encompasses plaintiff's current as-applied civil constitutional challenges for declaratory and injunctive relief, where all are grounded in defendant's prior, current, and continued enforcement of Article 27A specifically against plaintiff. See Laurel Sand & Gravel, Inc. v. Wilson, 519 F.3d 156, 162–63 (4th Cir. 2008) (holding that a plaintiff's "as applied claim itself was subsumed by the decision in" a prior case addressing claims for declaratory judgment and injunction against enforcement of statute on unconstitutional grounds). In any event, plaintiff has not alleged conduct in the instant case stating a claim for a constitutional violation, for the reasons stated below and in the M&R, much less conduct approaching the extreme scenarios he describes.

A case upon which plaintiff relies, Lawlor v. Nat'l Screen Serv. Corp., 349 U.S. 322, 323 (1955), is instructively distinguishable in multiple respects. There, the plaintiff brought an antitrust claim for damages against a manufacturer and distributor of movie posters. In a prior suit, it had brought an antitrust action against the same defendant alleging they "had conspired to establish a monopoly in the distribution of standard accessories [movie posters] by means of exclusive licenses," seeking damages and injunction. Id. at 324. The prior suit, however, "was settled," including with a distributor licensing agreement in favor of the plaintiff. Id. The new suit alleged "the settlement . . . was merely a device used by the defendants in that case to perpetuate their conspiracy and monopoly." Id. at 325.

The court in Lawlor held no res judicata bar applied because of multiple circumstances. The "conduct presently complained of was all subsequent to the [prior] judgment." Id. at 328. There were new antitrust violations alleged, based upon new types of conduct such as "deliberately slow deliveries and tie-in sales." Id. Further "there was a substantial change in the scope of the

11

defendant's alleged monopoly." Id. In the instant case, by contrast, the conduct presently complained of took place both before and after the prior judgment, with defendant enforcing the same statutory directives at issue in the prior suit. The type of allegedly violative conduct has not changed, and there was also no "substantial change in the scope of the defendants' alleged" conduct. Id. There was no intervening agreement, or other transformative action by defendant, upon which now plaintiff exclusively brings suit, as in Lawlor.

In sum, plaintiff's claims are barred by res judicata.[8] Defendant's motion thus must be granted on this basis.

2. Merits

In addition, and in the alternative, plaintiff's complaint must be dismissed because plaintiff fails to allege facts giving rise to a plausible inference that defendant violated plaintiff's constitutional rights. Upon de novo review of plaintiff's objections and the record in this case, the court adopts and incorporates herein by reference the analysis of the M&R addressing the merits of plaintiff's claims. (See M&R (DE 19) at 9-20). The court writes separately to address in more detail plaintiff's Fourth Amendment search claim and Fifth Amendment claim, as these have been the subject of particular emphasis in plaintiff's objections.

Plaintiff argues he has stated a claim for violation of his constitutional rights, premised upon an unlawful search without a warrant, on the basis of his allegations that "law enforcement came to the home of Plaintiff on February 1, 2024, which has a properly posted no trespassing sign, after having previously been informed that they were not welcome at Plaintiff's home in 2019, and came onto the porch of Plaintiff's home for the purpose of obtaining information as part

---

[8] The court has reviewed additional remaining arguments asserted in plaintiff's objections concerning res judicata, as well as allegations in the complaint cited by plaintiff, and has determined that they do not alter the determinations made herein regarding res judicata as to each of plaintiffs claims now asserted.

of a criminal investigation." (Pl's Mot. To Show Cause (DE 20) at 2-3). Plaintiff emphasizes the following allegations concerning the lack of any invitation when officers "encroached upon" "the curtilage" of his home, (Compl. ¶ 748):

> This last occurrence of this involved Captain Michael Stephenson of the Hertford County Sheriff's Office coming to the home of Plaintiff on or about Thursday, February 1, 2024. Despite Sheriff having previously been informed that neither him nor his cohorts are welcome on the property of Plaintiff's home, meaning that there is neither an explicit nor implicit invitation, Sheriff still continues to have his deputies come to the home of Plaintiff. There is additionally a posted "no trespassing" properly posted at Plaintiffs home. Any other person who continues to come to the home of an individual who has told them to stay away would be arrested for trespassing. Sheriff is not operating under the standard norms of societal behavior in regard to invitations. Sheriff is prohibited, in the same manner as every other person in the United States, from stepping foot or authorizing deputies to set foot upon Plaintiff's home without Plaintiff's leave in the absence of a warrant.

Further, plaintiff alleges:

> Plaintiff attempted to get in contact with Captain Stephenson directly to ascertain the justification for coming to Plaintiff's home. Plaintiff was unable to get in contact with Captain Stephenson directly, but was contacted by Sergeant McDarren or McCarren of the Hertford County Sheriff's Office on Saturday, February 3, 2024. Plaintiff inquired as to the reason for Captain Stephenson coming to the home of Plaintiff and was told that it was a "routine check" and when questioned in regard to the routine check was told that "[Cpt. Stephenson] was checking for the sex offenders." Cpt. Stephenson has neither explicit nor implicit permission to come to Plaintiff's home and the only reason that law enforcement continues to harass Plaintiff at his home is due to §14-208.9A(b) of Article 27A. This action of coming to Plaintiff's property to gather evidence is a search.

(Id. ¶¶ 756-757).

Plaintiff's argument that the foregoing allegations state a claim against defendant for a unlawful search, in violation of plaintiff's constitutional rights, fails as a matter of law because it does not take into account that the search is conducted under the statutory authority of Article 27A. Indeed, the statute not only allows, but requires, the sheriff, in the lawful exercise of his duties under the statute, to "make a reasonable attempt to verify that the person is residing at the registered address." N.C. Gen. Stat. § 14-208.9A(a)(4). Further, the statute expressly provides that

13

"Additional Verification May Be Required," and it allows that "[d]uring the period that an offender is required to be registered under this Article, the sheriff is authorized to attempt to verify that the offender continues to reside at the address last registered by the offender." N.C. Gen. Stat. § 14-208.9A(b).

"The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, <u>the degree to which it is needed for the promotion of legitimate governmental interests</u>." <u>United States v. Knights</u>, 534 U.S. 112, 118–19 (2001) (emphasis added). Here, on the one hand, the alleged search by officers intruded upon plaintiff's privacy to the limited degree of his front porch in his absence, accepting plaintiff's allegation that officers acted contrary to his instructions to stay away. See <u>Rogers v. Pendleton</u>, 249 F.3d 279, 289 (4th Cir. 2001) (noting "distinction between approaching a house to knock on the front door, as citizens do every day, and persisting, in the face of a request to leave by the owner of property").

On the other hand, the degree to which this intrusion was needed for the promotion of legitimate governmental interests in public safety set forth in Article 27A is great. Indeed, Article 27A expressly states that "protection of the public from sex offenders is of <u>paramount governmental interest</u>." N.C. Gen. Stat. § 14-208.5 (emphasis added). In addition, it is the purpose of Article 27A to "assist law enforcement agencies' efforts to protect communities. . . and <u>to authorize the access</u> to necessary and relevant information about those offenders to others as provided in this Article." <u>Id.</u> (emphasis added). Here, verification of residency is a core relevant type of information authorized by the statute. N.C. Gen. Stat. § 14-208.9A(b); see <u>United States v. Olson</u>, 114 F.4th 269, 277 (4th Cir. 2024) ("assum[ing] that suspicionless searches of sex offenders are unobjectionable" due to the public safety needs embodied in a sex offender

14

registration statute). As such, plaintiff has not alleged facts giving rise to a plausible inference that the alleged search was unreasonable in light of the requirements of Article 27A.

Therefore, based on the circumstances alleged, plaintiff has not stated a constitutional violation against defendant due to officers' approaches to plaintiff's home, whether couched as a Fourth, Eighth, or Fourteenth Amendment claim.

The court's determination of plaintiff's remaining claims premised upon compelled visits to the Sheriff's office and enforcement of other requirements of Article 27A, under the circumstances alleged, follows in a similar vein. Cases cited by plaintiff are inapposite because they do not involve duties and obligations arising out of a comprehensive sex registry statute, as here. For example, plaintiff cites Kaupp v. Texas, 538 U.S. 626, 630 (2003), for the proposition that the Supreme Court has never "sustained against Fourth Amendment challenge the involuntary removal of a suspect from his home to a police station and his detention there for investigative purposes absent probable cause or judicial authorization." But the statute here does not require involuntary removal of plaintiff from his home for investigative purposes; rather, it requires plaintiff to "return the verification form in person to the sheriff" and it requires plaintiff to "report[] in person to the sheriff" to register changes. N.C. Gen. Stat. §§ 14-208.9 14-208.9A. Further, plaintiff's allegations concerning his repeated visits to the sheriff's office, and his actual experience at those visits, (e.g., Compl. ¶¶ 260-262, 330-331, 352, 368, 534-535), do not state a plausible claim that defendant caused the violation of plaintiff's constitutional rights, in the context of defendant's enforcement of the statutory requirements of Article 27A.[9]

---

[9] The court has reviewed additional remaining arguments asserted in plaintiff's objections concerning the merits of his claims, as well as allegations in the complaint cited by plaintiff, and has determined that they do not alter the determinations made herein and in the M&R as to each of plaintiffs claims now asserted.

15

In sum, in the alternative to res judicata, plaintiff fails to state a claim against defendant for violation of his constitutional rights on the basis of the allegations in the complaint. Therefore, defendant's motion to dismiss must be granted for this alternative reason.

## CONCLUSION

Based on the foregoing, the court GRANTS defendant's motion to dismiss (DE 12). Plaintiff's complaint is DISMISSED pursuant to Federal Rule of Civil Procedure 12(b)(6). The clerk is DIRECTED to close this case.

SO ORDERED, this the 12th day of March, 2025.

_____
LOUISE W. FLANAGAN
United States District Judge

16

Case 2:24-cv-00003-FL-KS     Document 28     Filed 03/12/25     Page 16 of 16